UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

KERRI M. PROVASNIK,     )
             )
   Plaintiff,      )
             )
  vs.         )  Case No. 1:22 CV 153 ACL
             )
MARTIN O'MALLEY,[1]     )
Commissioner of Social Security  )
Administration,      )
             )
   Defendant.     )

## **MEMORANDUM**

   Plaintiff Kerri M. Provasnik brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

   An Administrative Law Judge ("ALJ") found that, despite Provasnik's severe impairments, she was not disabled as she was capable of performing work existing in significant numbers in the national economy.

   This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

   For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit.   *See* 42 U.S.C. § 405(g).

## I.   Procedural History

Provasnik filed her application for DIB on June 10, 2020.   (Tr. 189-93.)   She claimed she became unable to work on October 1, 2019, due to schizophrenia, rheumatoid arthritis, post-traumatic stress disorder ("PTSD"), Raynaud's, low vision, fibromyalgia, and cyclic vomiting syndrome.   (Tr. 192, 235.)   Provasnik was 43 years of age at her alleged onset of disability date.   (Tr. 28.)   Her application was denied initially.   (Tr. 122-27.)

Provasnik's claim was denied by an ALJ on November 4, 2021.   (Tr. 12-29.)   The Appeals Council denied Provasnik's claim for review on September 8, 2022.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Provasnik first argues that the ALJ "failed to properly evaluate whether the claimant met the listings of impairments."   (Doc. 20 at 4.)   Provasnik next contends that the ALJ "failed to properly evaluate the medical opinions contained in the record."   *Id.*

## II.   The ALJ's Determination

The ALJ first found that Provasnik last met the insured status requirements of the Social Security Act on September 30, 2020.   (Tr. 15.)   She stated that Provasnik has not engaged in substantial gainful activity since her alleged onset date of October 1, 2019 through her date last insured of September 30, 2020.   *Id.*   In addition, the ALJ concluded that Provasnik had the following severe impairments: rheumatoid arthritis, fibromyalgia, residuals of right hip replacement, degenerative disc disease, obesity, chronic fatigue syndrome, sensorineural hearing loss, borderline intellectual functioning, PTSD, anxiety, depression, and schizoaffective disorder. *Id.*   The ALJ found that Provasnik did not have an impairment or combination of impairments

that met or medically equaled the severity of one of the listed impairments.   (Tr. 16.)

As to Provasnik's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned
> finds that, through the date last insured, the claimant had the
> residual functional capacity to perform sedentary work as defined
> in 20 CFR 404.1567(a) except she could occasionally climb ramps
> and stairs, but never climb ladders, ropes or scaffolds.   She could
> occasionally stoop, kneel, crouch and crawl.   With both
> extremities, she could frequently reach in all directions, handle and
> finger.   She had to avoid all exposure to unprotected heights and
> hazardous machinery.   She had to avoid concentrated exposure to
> extreme temperatures, vibration, and have a Code 3 or less noise
> environment.   She was limited to simple, routine and repetitive
> tasks and had sufficient concentration to persist in the performance
> of such tasks with standard breaks and few changes in the work
> setting.   She was able to take simple work-related judgment.   She
> required only occasional interaction with supervisors, coworkers,
> and the general public.

(Tr. 19.)

The ALJ found that Provasnik was not capable of performing her past relevant work, but

could perform other jobs that exist in significant numbers in the national economy, such as

product inspector, production worker, and assembler.   (Tr. 29.)   The ALJ therefore concluded

that Provasnik was not under a disability, as defined in the Social Security Act, from October 1,

2019, through September 30, 2020, her date last insured.   *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on June 10, 2020, the claimant
> was not disabled under sections 216(i) and 223(d) of the Social
> Security Act through September 30, 2020, the last date insured.

*Id.*

### III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."   *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.   The credibility findings made by the ALJ.

2.   The plaintiff's vocational factors.

3.   The medical evidence from treating and consulting physicians.

4.   The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.   Any corroboration by third parties of the plaintiff's impairments.

6.   The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

## III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th

Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating

of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

Provasnik argues that the ALJ erred in evaluating whether her impairments met the listings, and in evaluating the medical opinion evidence.   The undersigned will discuss these claims in turn.

As an initial matter, to be eligible for benefits, Provasnik must establish that she was disabled prior to the expiration of her insured status on September 30, 2020.   *See* 20 C.F.R. §§ 404.130, 404.131; *Hensley v. Colvin*, 829 F.3d 926, 929 (8th Cir. 2016) (A claimant must prove disability prior to the expiration of his insured status under Title II.).

### A.  Listings

Provasnik first argues that the ALJ erred in failing to consider whether Provasnik met or equaled Listing 12.03 ("Schizophrenia Spectrum and Other Psychotic Disorders") or Listing 12.15 ("Trauma and Stressor-Related Disorders").

Social Security Listings describe various physical and mental impairments that are "presumed severe enough to preclude any gainful work."   *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990); 20 C.F.R. pt. 404, subpt P, App. 1.   If a claimant's condition meets a Listing or if she has an impairment that is equal to a Listing, she is presumed qualified for benefits.   *Id.*   Listing 12.00 describes mental disorders and the medical (Paragraph A) and functional (Paragraph B) criteria that are used to determine whether a claimant meets the Listing.   The burden of proof is

on the claimant to establish that his or her impairment meets or equals a listing.   *See Pyland v. Apfel,* 149 F.3d 873, 877 (8th Cir. 1998).

Here, the ALJ found that Provasnik's mental impairments did not meet or medically equal the criteria of Listings 12.04 ("Depressive, Bipolar and Related Disorders") and 12.06 ("Anxiety and Obsessive-Compulsive Disorders").   (Tr. 18.)   When the record is considered as a whole, substantial evidence supports the ALJ's findings even if she did not specifically consider Listings 12.03 or 12.15.   *Cronin v. Saul*, 945 F.3d 1062, 1067 (8th Cir. 2019) ("We find that there is substantial evidence in the record to support the ALJ's finding that Cronin is not disabled within the meaning of the Social Security regulations and listings, regardless of which Section 12 mental disorder listing was considered.").

As Defendant points out, to satisfy the criteria of Listings 12.03, 12.04, 12.06, or 12.15, Plaintiff has the burden of satisfying paragraph A ***and either*** paragraph B ***or*** C.   *See* 20 C.F.R. Pt. 404, Subpt. P, §§12.03, 12.04, 12.06, 12.15.   Specifically, Paragraph B of each Listing requires a showing of "extreme limitation of one, or marked limitation of two" of four areas of mental functioning.   *See id.*

The ALJ considered Provasnik's mental impairments and found they "singly and in combination" did not meet the criteria of Listings 12.04 or 12.06, finding Provasnik failed to meet the requirements in paragraphs B and C of each of those Listings.   (Tr. 18-19.) Specifically, the ALJ found that Provasnik has moderate limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.   (Tr. 18.)   She indicated that Provasnik has been diagnosed with major depressive disorder, schizoaffective disorder, PTSD, and anxiety

disorder; and also alleges disabling pain.  *Id.*   The ALJ stated that the objective evidence does not, however, support the severity of Provasnik's complaints.  *Id.*

The ALJ explained that Provasnik reports having low motivation and decreased concentration, yet in mental status examinations she was not found to have impaired concentration.  (Tr. 18-19.)   The ALJ noted that Provasnik has a valid driver's license and is able to drive, and reported she goes shopping. (Tr. 19.)   Provasnik alleges having problems getting along with authority figures, yet the ALJ pointed out that Provasnik has never been fired from a job for this reason, was routinely noted to be cooperative and pleasant, and there is no documentation that she was agitated or irritable with medical staff.  *Id.*   The ALJ stated that Provasnik was routinely found to have a normal mood, affect, speech, thought processes, and cognition even when not being seen for her mental problems.  *Id.*   Additionally, the ALJ noted that the state agency psychologists found no severe mental impairments.  *Id.*   The ALJ concluded that the record does not support findings of marked or extreme limitations.  *Id.*   As such, the ALJ found that the paragraph B criteria were not satisfied.  *Id.*

Paragraph C of each Listing requires a showing that the claimant's mental disorder is "serious and persistent[,]" meaning she has "a medically documented history of the existence of the disorder over a period of at least 2 years," and evidence of both: (1) "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and (2) "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life[.]"  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, §§ 12.03, 12.04, 12.06, 12.15.   The ALJ found that the evidence fails to establish the presence of the paragraph C criteria.   (Tr. 19.)

In her brief, Provasnik does not provide any substantive analysis contesting the ALJ's findings on these issues.   Instead, she argues that Listings 12.03 and 12.15 "are the relevant Listings given Plaintiff's diagnoses," and that the ALJ's failure to consider them was "clear, reversible error."   (Doc. 20 at 5.)

The Court finds that the ALJ did not err in finding Provasnik's mental impairments did not meet or equal a listing.   As will be discussed in detail below, the ALJ properly evaluated the medical opinion evidence and then formulated a mental RFC supported by the record as a whole.

### B.  Evaluation of Opinion Evidence and RFC

Provasnik next contends that the ALJ failed to properly evaluate the medical opinions contained in the record.   Provasnik provides no argument in support of this contention, but only sets out the August 17, 2021 findings of consultative psychologist Jerry Cunningham, Psy.D.

Provasnik presented to Dr. Cunningham for a "Mental Diagnostic Evaluation and Intellectual Assessment with Comprehensive Trail Making Test" on August 17, 2021, upon the referral of the state agency.   (Tr. 793.)   Provasnik reported being diagnosed with PTSD when she was fifteen years old, due to physical and sexual abuse by her parents and foster parents.   *Id.* She got married at the age of twenty, and her husband physically abused her.   *Id.*   Provasnik had divorced and was currently in a non-abusive relationship.   *Id.*   She reported experiencing unwanted and disturbing memories about the trauma several times per month, nightmares several times per year, and flashbacks a few times a year.   *Id.*   She indicated that she has strong feelings of anger, fear, guilt, and feeling distant from others; difficulty feeling positive emotions; irritability; an exaggerated startle response; concentration problems; and sleep issues.   (Tr. 794.) Provasnik reported being depressed two times per week, which lasts the entire day.   *Id.*   Her depression began when she was ten years old, and she attempted suicide multiple times, the last

attempt occurring when she was sixteen.   *Id.*   Provasnik reported experiencing auditory

hallucinations, consisting of hearing people talking, several times per day.   *Id.*   She also

reported visual hallucinations, such as seeing a man with red eyes watch her sleep.   *Id.*

Provasnik had never been hospitalized in a psychiatric unit as an adult, was not receiving therapy

at the time, and was not taking any psychotropic medications.   (Tr. 794-95.)   As to her

activities of daily living, Provasnik reported that she "sometimes" takes care of her personal

hygiene, has a hard time dressing because her "liver and kidneys swell," cannot do chores due to

physical limitations, sometimes cooks and prepares meals, can go shopping autonomously, does

not participate in social activities, and cannot manage money effectively.   (Tr. 795.)   Provasnik

completed the eleventh grade, taking special education classes, and obtained her GED.   (Tr.

796.)   She has worked in retail, warehouse, office, and cleaning jobs.   *Id.*   She last worked at

Citi Group for three years, and left this position in 2013.   *Id.*

　　　　Dr. Cunningham noted Provasnik drove herself to the appointment, was dressed

appropriately, and her hygiene was adequate.   (Tr. 796.)   Provasnik reported that she was in a

"really bad" mood today, and her affect was dysphoric and congruent with her reported mood.

*Id.*   Upon examination, Dr. Cunningham found no psychomotor retardation or agitation,

Provasnik's speech was adequate although her volume was low, she denied any suicidal ideation,

and she was cooperative.   (Tr. 797.)   Dr. Cunningham administered the Wechsler Adult

Intelligence Scale-Fourth Edition ("WAIS-IV), which revealed a Full-Scale IQ of 74,

categorized as "borderline," and indicative of "below average general intellectual functioning."

(Tr. 797-98.)   Provasnik's "borderline" Working Memory Index was indicative of moderate

problems with attention, concentration, mental control, and reasoning; and her "low average"

Processing Speed Index was indicative of no short-term visual memory problems, attention

problems, or visual-motor coordination.   (Tr. 799.)   Dr. Cunningham also administered the

"Comprehensive Trail-Making Test," which he described as an assessment that is used to

evaluate and diagnose brain injury and other forms of central nervous system compromise.   *Id.*

This testing revealed "severe impairments."   *Id.*   Dr. Cunningham found that Provasnik met the

criteria for diagnoses of PTSD; schizoaffective disorder, depressed type; borderline intellectual

functioning; and alcohol use disorder, mild.   (Tr. 800-01.)   Dr. Cunningham expressed the

opinion that Provasnik has mild problems understanding and remembering simple instructions;

mild to moderate problems carrying out simple instructions; moderate problems making

judgments on simple work-related decisions and understanding and remembering complex

instructions; marked problems carrying out complex instructions, making judgments on complex

work-related decisions, interacting appropriately with the public, interacting appropriately with

supervisors, interacting with co-workers, responding to usual work situations, and responding to

change in a routine work setting.   (Tr. 801.)   He found Provasnik does not have the capacity to

complete work-like tasks within an acceptable timeframe.   *Id.*   Finally, Dr. Cunningham found

that Provasnik's ability to manage funds without assistance was "questionable due to her poor

decision making and impulsivity."   (Tr. 802.)

Claims filed after March 27, 2017, like Provasnik's, require the ALJ to evaluate medical

opinions pursuant to 20 C.F.R. § 404.1520c.   This provision states the Social Security

Administration "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s), including those

from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to evaluate

the persuasiveness of any opinion or prior administrative medical finding by considering the: (1)

supportability of the opinion with relevant objective medical evidence and supporting

explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.   20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how she considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2).   An ALJ may, but is not required to, explain how she considered the remaining factors.   *Id.   See Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (alterations omitted)).

The ALJ found that some of Dr. Cunningham's opinions regarding Provasnik's limitations were "not persuasive."   (Tr. 23.)   With regard to supportability, the ALJ first stated that Dr. Cunningham indicated that Provasnik's educational and developmental history was not consistent with a diagnosis of intellectual disability.   (Tr. 23, 799.)   The ALJ next noted that Dr. Cunningham found that Provasnik was cooperative, her mental status examination was essentially normal, no psychomotor retardation was noted, her speech was adequate, she denied current suicidal ideation, there were no delusions or other abnormalities in thought observed, she was not tangential in conversation, and she had never been psychiatrically hospitalized as an adult.   (Tr. 23, 796-97.)

The ALJ next stated that Dr. Cunningham's findings are not based upon treatment of Provasnik, but are merely a "one-time snap shot of the claimant's functioning at the time of the examination."  (Tr 23.)   The ALJ properly considered Dr. Cunningham's lack of treatment relationship in evaluating his opinions.   *See* 20 C.F.R. § 404.1520c(c).

As to consistency, the ALJ stated that Dr. Cunningham's findings of marked limitation with complex tasks and work-related decisions is consistent with the record, and consistent with the ALJ's finding that Provasnik is limited to simple work tasks and making simple work-related decisions.   *Id.*   The ALJ found that Dr. Cunningham's finding of marked limitations in completing tasks on time and interacting with others are not consistent with the records, which reveal the following:   she was always appropriate with providers, had never been fired from a job because of problems getting along with others, was able to advocate for services and her general health, was actively engaged and smiled easily, reported she cared for her schizophrenic daughter, and was noted to be able to cope with a number of stressors effectively.  (Tr. 23, 377, 591, 597, 610, 614, 617, 620, 624, 632, 636, 639, 642, 653, 657, 660, 707, 711, 723, 771.)

With regard to Dr. Cunningham's diagnosis of borderline intellectual functioning, the ALJ stated that Provasnik's educational and work history reveal no significant intellectual deficits.  (Tr. 24.)   Specifically, Provasnik obtained her GED, and worked in various jobs, most recently at Citi Group for three years.  (Tr. 796.)   The ALJ also pointed out that Dr. Cunningham found that Provasnik's educational and developmental history was *not* consistent with a diagnosis of intellectual disability.  (Tr. 24, 799.)   The ALJ therefore concluded that Provasnik's borderline intellectual functioning is a severe impairment, but does not cause more restricted limitations than those noted within the ALJ's RFC determination.  (Tr. 24.)

The undersigned finds that the ALJ properly evaluated Dr. Cunningham's opinions. Provasnik argues that the ALJ "failed to properly evaluate opinion evidence, which led to an unsupportable RFC assessment."   (Doc. 20 at 6.)   She does not, however, point to any specific error, nor does she even specify the medical opinion that is the subject of her claim.   The ALJ explained how she addressed the supportability and consistency factors with regard to Dr. Cunningham's opinion, as discussed above.   She pointed to specific evidence demonstrating that the record did not support the presence of marked limitations in completing tasks on time and interacting with others.   Further, the undersigned notes that Dr. Cunningham's opinion was provided after the September 30, 2020 expiration of Provasnik's insured status.

The only other opinions regarding Provasnik's mental[2] limitations are those of the state agency psychologists, Linda Skolnick, Psy.D., and James Morgan, Ph.D.   (Tr. 80, 92.)   Drs. Skolnick and Morgan both found that Provasnik's mental impairments were not severe, as they appeared to be well-controlled with medication.   *Id.*   The ALJ found that these opinions were "not persuasive," as the record reveals that Provasnik is "more than minimally limited by her mental impairments."   (Tr. 19.)   Because the ALJ found greater limitations resulting from Provasnik's mental impairments than those found by the state agency psychologists, any error resulting from the ALJ's evaluation of these opinions was harmless.

In addition to evaluating the medical opinions of record, the ALJ provided a thorough summary of Provasnik's treatment for her mental impairments.   She noted Provasnik received treatment and services from Comtrea Comprehensive Health Center from November 2019 through November 2020.   (Tr. 21, 588-661, 770-91.)   These records note symptoms of anxiety, low mood, obsessive thoughts, hallucinations, insomnia, intrusive thoughts, decreased

---

[2]Provasnik does not challenge the ALJ's findings regarding her physical limitations.

concentration, and memory loss.   *Id.*   Provasnik reported that she was abused as a child and the records note diagnoses of schizophrenia, generalized anxiety disorder ("GAD"), and PTSD.   *Id.*  At her November 8, 2019 consultation, Provasnik reported that she had last seen a psychiatrist 12 to 13 years ago.   (Tr. 596.)   Mental status examination showed Provasnik had an appropriate affect, appropriate mood, good insight and judgment, and normal thought content and processes.  (Tr. 591.)   She was prescribed Latuda[3] and Hydroxyzine[4] in March 2020, and in April 2020 reported that the medication was "really helping" and she was doing "a lot better."   (Tr. 612.)  Psychiatrist Jhansi Vasireddy, M.D., noted that Provasnik was alert, cooperative, engaged, her speech was coherent, her insight was fair, her judgment was intact, her thought process was linear and goal-directed, she was calm, and had no auditory or visual hallucinations or paranoia.  (Tr. 617.)   He found that all of her mental impairments were "stable or improved."   *Id.*   In May 2020, Provasnik reported to her counselor at Comtrea that she was planning a family summer vacation and was really excited about it.   (Tr. 624.)   Dr. Vasireddy noted Provasnik reported she was doing better with her depression and anxiety in June 2020, and refilled her medications.  (Tr. 629, 632.)   Provasnik's counselor indicated Provasnik was actively engaged during her sessions in June and July of 2020, and discussed vacation plans.   (Tr. 635-36, 638-39.)   In September 2020, Provasnik reported feeling "sad" due to her husband's behavior on a camping trip, and indicated a desire to find social activities that would make her happy.   (Tr. 659.)   On November 16, 2020, Provasnik reported that her medication was helping with her anxiety, but

---

[3]Latuda is an antipsychotic drug indicated for the treatment of schizophrenia and depression associated with bipolar disorder.   *See* WebMD, http://www.webmd.com/drugs (last visited February 14, 2024).

[4]Hydroxyzine is an antihistamine indicated for the short-term treatment of anxiety.   *See* WebMD, http://www.webmd.com/drugs (last visited February 14, 2024).

she was experiencing pain from autoimmune diseases, which caused her to see "shadows." (Tr. 772.) She also complained of lack of energy and motivation. *Id.* On examination, Dr. Vasireddy found Provasnik was alert, cooperative, engaged, coherent, her insight was fair, her judgment was intact, her thought process was linear and goal-directed, her attention was intact, her fund of knowledge appeared within normal limits, her stated mood was depressed, and her thought content was without auditory or visual hallucinations. (Tr. 774-75.) Dr. Vasireddy diagnosed her with stable or improved PTSD, but worsening GAD and schizophrenia. (Tr. 775.)

Provasnik began receiving treatment at Advanced Psychiatric Services on November 19, 2020—after the expiration of her insured status—for her mental impairments. (Tr. 22, 698.) Michael Krownapple, Psy.D, found that Provasnik was positive and motivated for therapy, and "expressed confidence and engaged well and clearly." (Tr. 698.) In January 2021, Provasnik reported that her mood was "somewhat ok now," but she experienced a "really bad manic episode" on Christmas, during which she "blacked out for 8 hours." (Tr. 22, 701.) She indicated that the episode may have been caused by her medication. *Id.* On examination, Dr. Krownapple noted a depressed mood and anxiety due to pain, Provasnik was cooperative, logical, goal-oriented, she reported auditory and visual hallucinations, her language was appropriate, her fund of knowledge was average, her judgment was fair, her remote and immediate memory was impaired, and her concentration was impaired. (Tr. 702.) In March and April of 2021, Dr. Krownapple noted that Provasnik was effectively coping with a number of stressors, including a divorce from her husband, "emphasizing her resiliency." (Tr. 22, 707.) Her mood was depressed and her affect was blunted. (Tr. 709, 714.)

The ALJ concluded that Provasnik's treatment records do not document any observations by a treating psychiatrist or psychologist of significant abnormalities or deficits lasting for twelve months despite treatment in the following areas: her mood, affect, thought processes, concentration, attention, pace, persistence, social interaction, activities of daily living, speech, psychomotor activity, focus, contact with reality, eye contact, orientation, demeanor, abilities to cope with stress, ability to work without decompensation, ability to understand and follow instructions, judgment, insight, or cognitive function.   (Tr. 27.)   She further noted that the record does not document findings by a treating provider of any significant limitations of function, lasting twelve months in duration despite treatment since the alleged onset date.   *Id.*

The ALJ then made the following determination regarding Provasnik's mental RFC through her date last insured: limited to simple, routine, and repetitive tasks; has sufficient concentration to persist in the performance of such tasks with standard breaks and few changes in the work setting; able to make simple work-related judgments; and requires only occasional interaction with supervisors, coworkers, and the general public.   (Tr. 19.)

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v.*

*Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing

*Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

      The undersigned finds that the RFC determination is supported by substantial evidence

on the record as a whole.   In her discretion, the ALJ made an RFC finding that did not precisely

reflect any of the medical opinions of record.   *See Martise*, 641 F.3d at 927 (ALJ is not required

to rely entirely on one particular physician's opinion or choose between opinions).   She

considered Provasnik's severe mental impairments when restricting her to only simple, routine,

and repetitive work with few changes; and only occasional interaction with supervisors,

coworkers, and the general public.   The ALJ's RFC determination is *more restrictive* than that

of the prior administrative findings by Drs. Skolnick and Morgan, Ph.D., who found Provasnik's

mental impairments were not severe.   The ALJ properly evaluated Dr. Cunningham's opinion

and found that the record, including Dr. Cunningham's own report, did not support the presence

of marked limitations.   Provasnik points to no evidence in the record which establishes an

inability to perform a restricted range of simple work during the relevant time period.   *See*

*Hensley*, 829 F.3d at 993 ("If an applicant for disability benefits is not insured for Title II

purposes, then we only consider the applicant's medical condition as of his or her date last

insured.").   Thus, Provasnik has failed to demonstrate that the ALJ's decision was outside the

available "zone of choice."

      Accordingly, Judgment will be entered separately in favor of Defendant in accordance

with this Memorandum.


                    **/s/** *Abbie Crites-Leoni*
                    ABBIE CRITES-LEONI
                    UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of February, 2024.